

**ORDERED in the Southern District of Florida on September 23, 2009.**

_A. Jay Cristol, Judge_
**A. Jay Cristol, Judge**
**United States Bankruptcy Court**

_____

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
www.flsb.uscourts.gov

IN RE:                                        CASE NO.: 08-13450-AJC

ALEX VALLADARES

    Debtor.

_____/

**ORDER AUTHORIZING AND APPROVING THE SALE**
**OF CERTAIN ASSETS OF THE DEBTOR FREE AND CLEAR**
**OF LIENS, CLAIMS, INTERESTS, CHARGES AND ENCUMBRANCES**

**THIS MATTER** came before the Court on the 11th day of September 2009 at 10:30 a.m. in

Miami, Florida, upon the Court's _Sua Sponte Order Sua Sponte Order (A) Establishing Bidding and_

_Sale Procedures. (B) Shortening Time for Deadlines on Confirmation Hearing and (C) Scheduling_

_Sale Hearing and Confirmation. Final Sale Hearing_ (**"Sale Procedures Order"**) **(D.E.** 287).

There were three objections filed to the Sale Procedures Order: (1) D.E. 327 filed by Hoyt

Stephenson, National Financial Systems Management, Inc., Fitness Clubs of America, LLC; (2) D.E.

328 filed by the Debtor; and (3) D.E. 329 filed by Berta Aedo, Mirna Valladares. At the

Sale Hearing, Purchasers, as defined below, stipulated that the Purchase Agreement is not subject to a resolution of the Motion to Vacate Final Judgment pending in Adversary Case No. 09-1257-BKC-AJC-A, and Lady of America Franchise Corporation ("LOAFC") stipulated that if the Purchase Agreement is approved and the contemplated sale closes that (1) it would make no claim to the $450,000 held in the trust account of Debtor's counsel Brian Behar (the "Disputed Funds") and support the Trustee's efforts to obtain a Court determination that the Disputed Funds are property of this bankruptcy estate and (2) that it would waive any claim against this bankruptcy estate upon closing of the Purchase Agreement. At the Sale Hearing, the Court announced that Fitness Lease Management LLC and HCOA Franchise Holding LLC (the "Purchasers") had submitted the highest or best offer for certain assets pursuant to the attached Purchase Agreement (the "Purchase Agreement") (attached hereto as Exhibit 1) executed between the Trustee and the Purchasers. The assets subject of the Purchasers' offer are identified in the Purchase Agreement (the "Acquired Assets"), which, for purposes of clarity, provides that the Trustee shall sell all right, title and interest to the Acquired Assets that are property of the Estate. The Court having reviewed and considered the arguments of counsel made, and the evidence proffered or adduced at the Sale Hearing; and it appearing that the relief requested is in the best interests of the Debtor, its estate and creditors and other parties in interest, for the reasons cited on the record and those listed below it is

    **ORDERED** as follows:

    1. For the reasons state on the record, in addition to those reasons recited herein, the sale under 11 U.S.C.§363 to the Purchasers of the Acquired Assets pursuant to the Purchase Agreement AS IS, WHERE IS, WITHOUT ANY REPRESENTATIONS OR WARRANTIES OF ANY KIND by the Trustee is **APPROVED** and the Purchase Agreement is incorporated herein.

All Objections, if any, to the Sale that have not been withdrawn, waived, or settled as set forth herein, or otherwise, and all reservations of rights included therein, are overruled on the merits.

2.      The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Fed. R. Bankr. P. 7052, made applicable to this proceeding pursuant to Fed. R. Bankr. P. 9014

3.      The Court further notes that it has serious concerns about the Debtor's ability to propose a confirmable plan, including but not limited to the Debtor's ability to meet the good faith requirement under 11 U.S.C. § 1 129(a)(3) .

4.      The Court has jurisdiction over the transactions contemplated by the Purchase Agreement pursuant to 28 U.S.C. §§ 157 and 1334, and this matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (N). Venue of this case in this district is proper under 28 U.S.C. §§ 1408 and 1409.

5.      The statutory and rule based predicates for the relief sought are sections 105 and 363 of the Bankruptcy Code, and Fed. R. Bankr. P. 2002, 6004 and 9014.

6.      Due, proper, timely, adequate and sufficient notice of the Sale Procedures Order, the Sale Hearing, and the Auction has been provided in accordance with sections 102(1) and 363 of the Bankruptcy Code and Fed. R. Bankr. P. 2002, 6004 and 9014 and in compliance with the Sales Procedures Order to each party entitled thereto, such notice was good and sufficient, and appropriate under the particular circumstances, and no other or further notice is or shall be required.

7.      The Trustee has provided potential bidders with an opportunity for adequate due diligence.

8.      As demonstrated by (i) the testimony and other evidence proffered or adduced at the Sale Hearing and (ii) the representations of counsel made on the record at the Sale Hearing, the Trustee has marketed the Acquired Assets and conducted the sale process in compliance with the Sale Procedures Order and the Auction was duly noticed.

9.      The Bidding Procedures afforded a full, fair and reasonable opportunity for any qualified entity to make a higher and better offer to purchase the Acquired Assets and no higher or better offer has been made. The Bidding Procedures approved in the Sale Procedures Order have been fully complied with in all respects.

10.      The Trustee has full authority to execute the Purchase Agreement and all other documents contemplated thereby.

11.      The Trustee has demonstrated good, sufficient, and sound business purposes and justifications for the Sale pursuant to section 3 63(b) of the Bankruptcy Code.

12.      The Sale of the Acquired Assets is a reasonable exercise of the Trustee's business judgment.

13.      The Purchase Agreement was negotiated, proposed and entered into by the Trustee and the Purchasers without collusion, in good faith, and from arm's-length bargaining positions. Neither the Trustee nor the Purchasers or any of their affiliates have engaged in any conduct that would cause or permit the Purchase Agreement to be avoided under section 3 63(n) of the Bankruptcy Code.

14.      The Purchasers are good faith purchasers under section 3 63(m) of the Bankruptcy Code and, as such, is entitled to all of the protections afforded thereby with respect to the transactions hereby approved.

15.     Neither the Purchasers nor any of their affiliates is an "insider" of the Debtor or any party affiliated with the Debtor, as that term is defined in section 101 of the Bankruptcy Code.

16.     The consideration provided by the Purchasers for the Acquired Assets pursuant to the Purchase Agreement (i) is fair and reasonable, (ii) is the highest or otherwise best offer for the Acquired Assets, (iii) will provide a greater recovery for the Debtor's creditors than would be provided by any other practical available alternative, and (iv) constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code and under the laws of the United States and the State of Florida.

17.     The Trustee is selling Trustee's interest in and to the Acquired Assets AS IS, WHERE IS, WITHOUT ANY REPRESENTATIONS OR WARRANTIES OF ANY KIND, and the transfer of the Trustee's interest in the Acquired Assets to the Purchasers pursuant to the Purchase Agreement will be a legal, valid and effective transfer of such interests.

18.     As of the Closing and pursuant to the terms of the Purchase Agreement, the transfer of the Acquired Assets to the Purchasers will be a legal, valid, enforceable, and effective transfer of the Acquired Assets, and will vest the Purchasers with all right, title, and interest of the Debtor in the Acquired Assets free and clear of all liens, claims, encumbrances and interests. ("Interests"). All such Interests shall attach to the Sale Proceeds in the same priority as they existed in the Purchase Assets. Notwithstanding, the secured claim filed by Yamin Meneses, shall be satisfied in full as against the estate upon the payment of $300,000 pursuant to the terms of the Purchase Agreement.

19.     The Purchasers would not have entered into the Purchase Agreement and would not consummate the transactions contemplated thereby, thus adversely affecting the Debtor, its estate, and its creditors, if the sale of the Acquired Assets to the Purchasers was not free and clear of all Interests as defined herein.

20.     The Trustee may sell all of the Acquired Assets free and clear of all Interests because, in each case, one or more of the standards set forth in section 363 (f)(1 )-(5) of the Bankruptcy Code has been satisfied.

21.     Neither the Purchasers nor any of their affiliates is a successor to the Debtor or its bankruptcy estate by reason of any theory of law or equity, and neither the Purchasers nor any of their affiliates shall assume or in any way be responsible for any liability or obligation of any of the Debtor and/or its bankruptcy estate other than as specifically provided in the Purchase Agreement.

22.     Proper, timely, adequate and sufficient notice of the proposed Sale has been provided by the Trustee to all relevant parties, and no other or further notice is required.

23.     The Trustee is authorized to execute such other documents as are reasonably necessary or desirable to implement this Order.

24.     The Purchase Agreement substantially in the form attached hereto as Exhibit 1, and all of the terms and conditions thereof, are approved in all respects, and the Sale of the Acquired Assets to the Purchasers is authorized under sections 105 and 363(b) and (f) of the Bankruptcy Code.

25.     The provisions of sections 3 63(b) and (f) of the Bankruptcy Code have been complied with as to the Sale of the Acquired Assets.

26.     Pursuant to section 3 63(b) of the Bankruptcy Code, the Trustee is authorized to perform its obligations under and comply with the terms of the Purchase Agreement, and consummate the Sale, pursuant to and in accordance with the terms and conditions of the Purchase Agreement.

27.     The Trustee is authorized and directed, pursuant to sections 105(a) and 3 63(b) and (f) of the Bankruptcy Code, to execute and deliver, and empowered to fully perform under,

consummate and implement, the Purchase Agreement, together with all additional instruments, agreements and documents that may be reasonably necessary or desirable to implement the Purchase Agreement and to take all further actions as may be reasonably requested by the Purchasers for the purpose of assigning, transferring, granting, conveying and conferring to the Purchasers, or reducing to the Purchasers' possession, any or all of the Trustee's interest in the Acquired Assets and as may be necessary or appropriate to the performance of the obligations contemplated by the Purchase Agreement.

28.     The Purchasers shall pay or deliver the Purchase Price at the Closing of the purchase and sale transaction in accordance with the terms of the Purchase Agreement and this Order..

29.     This Order and the Purchase Agreement shall be binding in all respects upon all creditors (whether known or unknown) of the Debtor, all successors and assigns of the Purchasers, the Debtor and its affiliates and subsidiaries, and any subsequent trustees appointed in the Debtor's chapter 11 case or upon a conversion to chapter 7 under the Bankruptcy Code.

30.     The Purchase Agreement and any related agreements, documents, or other instruments may be modified, amended or supplemented by the parties thereto in a writing signed by both parties without further order of the Court, provided that any such modification, amendment, or supplement does not have a material adverse effect on the Debtor's estate.

31.     Except as expressly permitted or otherwise specifically provided for in the Purchase Agreement or this Order, pursuant to sections 105(a) and 363(f) of the Bankruptcy Code, the Trustee's interest in the Acquired Assets shall be transferred to the Purchasers upon consummation of the Purchase Agreement (the "Closing"), and shall be free and clear of all Interests as defined herein, with all such Interests of any kind or nature whatsoever to attach to the net proceeds of the Sale in the order of their priority, with the same validity, force and effect which they now have as against the Acquired Assets, subject to any claims and defenses the Debtor may possess with

respect thereto.

32.     Except as expressly permitted or otherwise specifically provided by the Purchase Agreement or this Order or to enforce the terms of the Purchase Agreement or this Order, all persons and entities, including all debt security holders, equity security holders, governmental, tax, and regulatory authorities, parties to executory contracts, customers, lenders, trade and other creditors, holding Interests as defined herein against or in the Debtor or the Acquired Assets (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or non-contingent, senior or subordinated), arising under or out of, in connection with, or in any way relating to, the Debtor, the Acquired Assets, the operation of the Debtor's business prior to the Closing, or the transfer of the Acquired Assets to the Purchasers, are forever barred, estopped, and permanently enjoined from asserting against the Purchasers, its successors or assigns, the Purchasers' property, or the Acquired Assets, such persons' or entities' Interests.

33.     The transfer of the Acquired Assets to the Purchasers pursuant to the Purchase Agreement shall constitute a legal, valid, and effective transfer of the Trustee's interest in the Acquired Assets, and shall vest the Purchasers with all right, title, and interest of the Debtor in and to the Acquired Assets free and clear of all Interests as defined herein.

34.     The Debtor shall fully cooperate with the transfer of the Acquired Assets, including, but not limited to, resigning as an officer or director of all Acquired Entities, turning over all books and records (including account information, any computer files in the possession of the debtor) of any Acquired Entities in his possession, custody or control, and shall be prohibited, directly or indirectly, from accessing any accounts or the facilities associated with the Franchises.

35.     Except as expressly permitted or otherwise specifically provided by the Purchase Agreement or this Order, if any person or entity that has filed financing statements, mortgages, mechanic's liens, lis pendens, or other documents or agreements evidencing Interests in the Debtor affecting the Acquired Assets or the Acquired Assets shall not have executed prior to the Closing, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, or releases of all Interests which the person or entity has with respect to the Debtor affecting the Acquired Assets or the Acquired Assets or otherwise (which shall be held in escrow pending closing), then the Purchasers are authorized and directed to execute and file such statements, instruments, releases and other documents on behalf of the person or entity with respect to the Acquired Assets and is authorized to file, register, or otherwise record a certified copy of this Order, which, once filed, registered or otherwise recorded, shall constitute conclusive evidence of the release of all Interests in the Acquired Assets.

36.     To the fullest extent that the Court is authorized under applicable law to so order, neither the purchase of the Trustee's interest in the Acquired Assets by the Purchasers nor the transactions contemplated will cause the Purchasers or any of its affiliates to be deemed a successor in any respect to the Debtor's business within the meaning of any federal, state or local revenue, pension, ERISA, tax, labor or environmental law, rule or regulation or under any products liability law or doctrine with respect to the Debtor's liability under such law, rules, regulations or doctrines. In addition, to the fullest extent that the Court is authorized under applicable law to so order, except as expressly provided in the Purchase Agreements or Order of this Court, the Purchasers do not acquire or assume any of the Debtor or any other person's liabilities, including any of the Debtor's obligations under any employment or collective bargaining agreement, and in no event shall Purchasers (a) be deemed the successor of the Debtor, (b) have, de facto or otherwise, merged with or into the

Debtor or (c) be deemed a mere continuation of the Debtor or the enterprises of the Debtor. To the greatest extent permitted by law, the Purchasers and their affiliates shall have no liability or obligation, if any, under The Worker Adjustment and Retraining Notification Act, 29 U.S.C. §§ 2101, et seq. (the "WARN Act"), or the Comprehensive Environmental Response Compensation and Liability Act, or any federal, state or local environmental law by virtue of the Purchasers' purchase of the Acquired Assets.

37.    The consideration provided by the Purchasers for the Trustee's interest in the Acquired Assets under the Purchase Agreement shall be deemed to constitute reasonably equivalent value and fair consideration under the Bankruptcy Code and under the laws of the United States and the State of Florida.

38.    The consideration provided by the Purchasers for the Acquired Assets under the Purchase Agreement is fair and reasonable and may not be avoided under section 3 63(n) of the Bankruptcy Code.

39.     On the Closing, each creditor of the Debtor is authorized and directed to execute such documents and take all other actions as may be necessary to release its Interests in the Acquired Assets, if any, as such Interests may have been recorded or may otherwise exist.

40.     The foregoing notwithstanding, the provision of this Order authorizing the sale and assignment of the Acquired Assets of the Debtor free and clear of Interests shall be self-executing, and notwithstanding the failure of the Debtor, the Purchasers, or any other party to execute, file or obtain releases, termination statements, assignments, consents or other instruments to effectuate, consummate and/or implement the provisions hereof or the Purchase Agreement with respect to the sale and assignment of such Acquired Assets, all Interests on such Acquired Assets shall be deemed released and shall attach to the proceeds of the Sale pursuant to this Order. All persons or

entities that are presently, or at the Closing, in possession of any of the Acquired Assets, are directed to surrender possession of such Acquired Assets to the Purchasers, or its designee at the Closing (except to the extent the Purchase Agreement expressly provides otherwise).

41.     This Order shall be effective as a determination that, on the Closing, all Interests, as defined herein, existing as to the Debtor or the Acquired Assets prior to the Closing have been unconditionally released, discharged and terminated, and that the conveyances described herein have been effected. From and after entry of this Order, neither the Debtor nor any creditor or other party in interest shall take or cause to be taken any action that would interfere with the transfer of the Acquired Assets to Purchasers in accordance with the terms of this Order and the Purchase Agreement, except as provided in paragraph 46 of this Order.

42.     Following the Closing, Purchasers and Trustee shall, from time to time, without further consideration, execute and deliver such instruments and take such further actions as may be reasonably necessary or desirable to carry out the provisions hereof and the transactions contemplated hereby (including, but not limited to, the assignment of the Estate's right, title and interest to any agreement, assets or entity constituting property of the Estate, which (i) existed prior to the date of Closing, (ii) were not identified as an Acquired Assets pursuant to the terms hereof, (iii) but, in the exercise of the Purchaser's reasonable business judgment, are necessary to the continued operation of the Franchises and, upon assumption thereof, the agreements, assets or entities shall be deemed Acquired Assets for all purposes); provided, however, that the party being requested to provide such further assurances will not be of agreements, assets or entities not

otherwise described as Acquired Assets, that such request for assignment be delivered to the Trustee within one (1) year of the Closing. If Trustee or its agents collect receivables or other funds properly belonging to Purchasers after the Closing Date (including any revenue processed through any of the NFFS Agreements), Trustee shall (and shall cause its agents to) promptly forward such collections or funds to Purchasers.

44.     The Purchasers and the Trustee have reached agreements reflected in Section 8.5 of the Purchase Agreement (a) related to the disposition of the Disputed Funds and (b) whereby Purchasers have agreed to make an accommodation related to certain potential pre-closing tax liabilities incurred by the Estate with respect to the Acquired Assets.

45.     This Court retains jurisdiction to enforce and implement the terms and provisions of this Order and the Purchase Agreement, all amendments thereto, any waivers and consents thereunder, and each of the agreements executed in connection therewith, in all respects, including retaining jurisdiction to (a) compel delivery of the Acquired Assets to the Purchasers, (b) compel delivery of the purchase price or performance of other obligations owed to the Trustee, (c) resolve any disputes arising under or related to the Purchase Agreement, including any dispute regarding ownership of any of the assets necessary to retain the benefit of the Franchise Rights, except as otherwise provided therein, and (d) interpret, implement, and enforce the provisions of this Order.

46.     The 10 day stay period under Bankruptcy Rule 6004(h) has not been waived. The transactions contemplated by the Purchase Agreement are undertaken by the Purchasers in good faith, as that term is used in section 3 63(m) of the Bankruptcy Code, and accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the Sale shall not affect the validity of the Sale to the Purchasers, unless such authorization is duly stayed pending

such appeal. The Purchasers are purchasers in good faith of the Trustee's interest in the Acquired

Assets, and is entitled to all of the protections afforded by section 3 63(m) of the Bankruptcy Code.

47. Finally, if any party moves to reconsider this Order within 10 days of its entry on the

basis that they have a bid in cash for more than 10% over the consideration under the Purchase

Agreement, in non-disputed funds, the Court may at its discretion after notice and hearing reopen the

bidding process.

# # #

Submitted by:
Gary M. Freedman, Esq.
Tabas, Freedman, Soloff, Miller & Brown, P.A.
14 N.E. First Avenue
Penthouse
Miami, Florida 33132
Telephone: (305) 375-8171
Fax: (305) 381-7708
E-Mail: gary@tabasfreedman.com

Copies to:
Gary M. Freedman, Esq,
*(Attorney Freedman shall serve a copy of this Order upon all interested parties upon receipt and file a certificate of service.)*

## PURCHASE AGREEMENT

THIS PURCHASE AGREEMENT (together with the exhibits and schedules hereto, this "Agreement"), made as of this 8th day of September, 2009, by and among (i) **FITNESS LEASE MANAGEMENT, LLC,** a Delaware limited liability company ("FLM"), (ii) **HCOA FRANCHISE HOLDING, LLC,** a Delaware limited liability company ("HCOA" and, collectively (i) and (ii), the "Purchasers"), and (iii) **BARRY E. MUKAMAL,** as trustee ("Trustee") for the estate of Alex F. Valladares (the "Estate").

## W I T N E S S E T H

WHEREAS, on March 24, 2008, Alex F. Valladares filed a voluntary petition for relief under Chapter 11 of Title 11, United States Code, 11 U.S.C. §§ 101, *et seq.* (the "Bankruptcy Code"), in the United States Bankruptcy Court for the Southern District of Florida (the "Bankruptcy Court"), Case No. 08-13450-BKC-AJC;

WHEREAS, Alex F. Valladares operates health clubs under Lady of America franchise agreements at the locations set forth on Exhibit A (the "Franchises").

WHEREAS, the Bankruptcy Court named the Barry Mukamal as trustee for the Estate pursuant to an order issued January 22, 2009;

WHEREAS, pursuant to a default final judgment issued by the Bankruptcy Court on June 5, 2009, the Bankruptcy Court found that Alex F. Valladares engaged in certain preferential and/or fraudulent transfers and ordered that such transferred interest be returned to the Estate;

WHEREAS, as a result of such avoidance action, the Estate owns the equity interest in the entities listed on Exhibit B in the percentages set forth therein;

WHEREAS, Purchasers, for themselves and/or their Permitted Designee, desire to purchase from Trustee, and Trustee desires to sell to Purchasers, free and clear of all liens, claims and encumbrances to the fullest extent permitted by law, in accordance with §§ 363(b) and (f) of the Bankruptcy Code, upon the terms and conditions set forth herein, (i) the Estate's right, title and interest to the shares, membership units or other equity interest, including any options, warrants or any other securities, in the entities identified on Exhibit B (the "Acquired Entities"), (ii) the Estate's right, title and interest in any franchise agreement(s) to operate the Franchises, including, but not limited to, the right to receive revenue from the members of each of the Franchises, and any other ancillary agreements with Lady of America Franchise Corp. (the "Franchise Rights"), (iii) all loans, other instruments of debt, or any other obligation due from the Acquired Entities to the Estate (or any person or entity claiming through Alex F. Valladares)(the "Shareholder Loan Rights"), and (iv) all rights and benefits, directly or indirectly, derived by the Estate from any contract or agreement (whether written or oral) entered into by the Estate with the Acquired Entities or Franchises (the "Estate's Contract Rights")(collectively (i) – (iv), the "Acquired Assets");

WHEREAS, the Bankruptcy Court entered an Order, dated August 20, 2009, by which it authorized the sale of the Acquired Assets to Qualified Bidders;

WHEREAS, the Purchasers (i) expressly agree to maintain the offer to purchase the Acquired Assets open and irrevocable, subject to the Trustee's right to accept the offer if it is the highest and the best offer at the auction and approved by the Bankruptcy Court; (ii) have delivered to the Trustee a $35,000 cash deposit to the Trustee; (iii) expressly agree that if designated by the Bankruptcy Court as a back-up bid, then Trustee may retain the Purchasers' deposit pending sale to the highest bidder; and (iv) have deposited in escrow with Holland & Knight LLP the remainder of the Cash Payment;

WHEREAS, HCOA has entered into a franchise agreement with Lady of America Corporation to operate each of the Franchises, which agreement will become effective upon the consummation of the transactions contemplated by this Agreement; and

NOW, THEREFORE, for and in consideration of the representations, warranties, covenants and agreements contained herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto, intending to be legally bound, agree as follows:

## ARTICLE 1

## DEFINITIONS

1.1    **Definitions.**

As used herein, the following terms shall have the following meanings:

"Acquired Assets" has the meaning ascribed thereto in the recitals hereto; provided that, at the option of the FLM, FLM may, at any time prior to Closing, notify the Trustee that FLM will not acquire one or more of the entities listed on Exhibit B and, upon such notification, such entity or entities shall be excluded from the definition of Acquired Entities.

"Acquired Entities" shall have the meaning ascribed thereto in the Recitals

hereto. "Agreement" has the meaning assigned to that term in the Preamble

hereto. "Allocation" has the meaning assigned to that term in Section 3.4

hereof. "Bankruptcy Code" has the meaning assigned to that term in the Recitals

hereto. "Bankruptcy Court" has the meaning assigned to that term in the Recitals

hereto.

"Bankruptcy Petition" means the voluntary bankruptcy petition filed by Alex F. Valladares on March 24, 2008 with the Bankruptcy Court.

"Cash Payment" has the meaning assigned to that term in Section 3.1(a)

hereof. "Closing" means the closing of transactions contemplated by this

Agreement. "Closing Date" has the meaning assigned to that term in Section 4.1

hereof.

"Closing Date Cash Payment" has the meaning assigned to the term in Section 3.1(a) hereof.

"Deposit" has the meaning assigned to that term in Section 3.1(a) hereof.

"Deposit Escrow Agent" has the meaning ascribed to that term in Section 3.1(a)

hereof. "Disputed Funds" has the meaning ascribed to that term in Section 8.5

hereof. "Earn-Out Payment" has the meaning ascribed to that term in Section 3.1(b)

hereof. "Earn-Out Period" has the meaning ascribed to that term in Section 3.1(b)

hereof. "Estate's Contract Rights" the meaning ascribed thereto in the Recitals

hereto. "Floor" shall mean $450,000.

"Franchise Rights" the meaning ascribed thereto in the Recitals hereto.

"Gross Revenue" means all monies recognized by the Purchasers from the operation of the Franchises, excluding monies received for sales taxes, voided sales or returns of merchandise or membership fees or returns, and customary third party revenue processing fees.

"Independent Accountant" has the meaning ascribed to that term in Section 3.1(iii).

"Lien" means any lien, security interest, pledge, hypothecation, encumbrance, title defect, conflicting or adverse claim of ownership (including any transfer restrictions or any interest arising as a result of such transfer restriction), equitable interest or other interest or claim (including but not limited to any and all "claims," as defined in § 101(5) of the Bankruptcy Code, and any and all rights and claims under any bulk transfer statutes and similar laws) in or with respect to any of the Acquired Assets (including but not limited to any options or rights to purchase such Assets and any mechanics' or tax liens), whether arising by agreement, by statute or otherwise and whether arising prior to, on or after the date of the filing of the Bankruptcy Petition.

"Material Adverse Effect" means there has been, occurred or arisen: (a) a material adverse change in the Acquired Assets, taken as a whole, or (b) any other event, condition or state of facts that are reasonably likely to materially and adversely affect the Acquired Assets.

"Meneses Claim" shall have the meaning ascribed in Section 3.1(c) hereof.

- 3 -

"NFFS Agreements" shall have the meaning ascribed in Section 2.2 hereof. "Overbid Auction" has the meaning assigned to that term in Section 12.12 hereof. "Permitted Designee" shall have the meaning ascribed thereto in Section 12.10 hereof.

"Person" means any individual, corporation, partnership, joint venture, trust, association, limited liability company, unincorporated organization, other entity, or governmental body or subdivision, agency, commission or authority thereof.

"Purchase Price" has the meaning assigned to that term in Section 3.1 hereof. "Purchasers" has the meaning assigned to that term in the Preamble hereto.

"Rejection Claim" the allowed claim by Hoyt Stephenson or National Financial Systems, Inc., or National Fitness Financial Systems, directly resulting from the rejection of the NFFS Agreements by the Trustee.

"Sale Motion" means the pleadings filed by Trustee with the Bankruptcy Court seeking approval of this Agreement and such other and ancillary documents and agreements hereto and thereto necessary and incident to the implementation of the transactions contemplated hereunder.

"Sale Order" means an order of the Bankruptcy Court substantially in the form attached hereto as Exhibit C, which has not been stayed and that provides that the Bankruptcy Court will not accept any petition for review or a motion for re-argument or rehearing.

"Shareholder Loan Rights" has the meaning ascribed thereto in the Recitals hereto. "Trustee" has the meaning assigned to that term in the Preamble hereto. **ARTICLE 2**

## **SALE AND PURCHASE OF ASSETS**

2.1 **Sale and Purchase of Assets.** On the Closing Date, (i) FLM shall purchase from the Trustee the Acquired Entities, the Estate's Contract Rights, and the Shareholder Loan Rights and (ii) HCOA shall purchase from the Trustee the Franchise Rights, and Trustee shall sell to each respective Purchaser, all of the Estate's right, title and interest in and to the Acquired Assets, free and clear of any Lien. Except as otherwise set forth in the Sale Order, the Trustee conveys the Acquired Assets AS IS, WHERE IS, WITHOUT ANY REPRESENTATIONS OR WARRANTIES OF ANY KIND.

2.2 **Excluded Obligations.**

Purchasers shall not assume or be obligated to perform any liabilities of any nature, whether known, unknown, absolute, accrued, contingent, inchoate or otherwise, relating to the

property or assets of Alex F. Valladares or his Estate other than the liabilities specifically assumed in this Agreement by virtue of the conveyance of the Acquired Assets. For the avoidance of doubt and not to be interpreted as a limitation to the previous sentence, the Trustee hereby acknowledges that neither FLM nor HCOA have assumed (i) the Revenue Processing Agreement, dated November 26, 2002, by and between National Financial Systems, Inc. and Lady of America Franchise Corporation (to which Alex Valladares is a third party beneficiary), (ii) Agreement, dated May 22, 2003, by and between Lady of America Franchise Corporation, Alex Valladares, and National Financial Systems, Inc., or (iii) any other agreements (whether written or oral) entered into with Hoyt Stephenson, National Financial Systems, Inc., National Fitness Financial Systems, or any affiliates of the foregoing relating to services (including revenue processing services) provided to either the Acquired Entities or the Franchises (collectively, the "NFFS Agreements"). Notwithstanding the foregoing, it is the current intent of the Purchasers to negotiate a new agreement for revenue processing with NFFS; however, if an agreement is not reached between the parties, the Trustee hereby agrees to move to reject the NFFS Agreements thirty (30) days after the Closing and Trustee shall provide reasonable assistance the Purchasers in obtaining all information and data necessary to process revenue derived from the members of the Franchises and, if requested by Purchasers, to transfer such information to a third-party revenue processing company.

## ARTICLE 3

## PURCHASE PRICE; ALLOCATION

3.1 **Deposit; Purchase Price.** In consideration for Trustee's sale of the Acquired Assets to Purchasers under the terms of this Agreement, the Purchasers shall pay the following (collectively, the "Purchase Price"):

(a) *Cash Payment; Deposit.* Purchasers shall pay to Trustee One Hundred Thousand Dollars ($100,000.00) (the "Cash Payment"). Contemporaneous with the execution and delivery of this Agreement, Purchasers tendered payment of a good faith earnest money deposit in the amount of Thirty Five Thousand Dollars ($35,000) (the "Deposit") with Tabas, Freedman, Soloff, Miller & Brown, PA (the "Deposit Escrow Agent"). The Deposit shall be held by the Deposit Escrow Agent subject to the terms and conditions of a deposit escrow agreement. On the Closing Date, Purchasers shall (i) deliver to Trustee the Cash Payment less the amount of the Deposit (the "Closing Date Cash Payment"), and (ii) provide the Deposit Escrow Agent with written instructions to release and pay over to Trustee the Deposit.

(b) *Earn-Out.* Purchasers shall pay to the Trustee a fee equal to the greater of the Floor or three percent (3%) of Gross Revenue ("Earn-Out Payment") for the twelve month period commencing on the Closing Date ("Earn-Out Period"). The Earn-Out Payment shall be paid to the Trustee as follows: (i) by no later than the 30th day of each month during the Earn-Out Period, the Purchasers shall pay to the Trustee three percent (3%) of the Gross Revenue recognized by the Purchasers for the immediately preceding month (the "Monthly Payment") and (ii) if the monthly payments made during

the Earn-Out Period do not equal or exceed the Earn-Out Payment, then a true-up payment shall be made by the Purchasers to the Trustee in the manner set forth in <u>Section 3.2.</u>

(c)     *Payment to Secured Creditor.* At Closing, Purchasers shall pay to the holder of the secured claim filed by Yamin Meneses against the estate of Alex F. Valladares (the <u>"Meneses Claim"</u>) Three Hundred Thousand Dollars ($300,000.00) in immediately available funds.

(d)     *Payment for Rejection Claim.* Purchasers shall pay to the Trustee an amount calculated as follows: the amount of the Rejection Claim *multiplied by* the percentage return to the allowed unsecured creditors of the Estate (i.e. amount actually distributable to the unsecured creditors after payment of administrative expenses, secured creditors and other priority claims), calculated excluding the Rejection Claim. For example, if the amount available to pay allowed unsecured creditors equals $1,000,000, the amount of the allowed unsecured claims (excluding the Rejection Claim) equals $4,000,000 and the Rejection Claim equals $200,000, then the additional amount paid to the Trustee shall equal $200,000($1,000,000/$4,000,000) or $50,000.

## 3.2    **Calculation of Earn-Out.**

(a)     Within thirty (30) days after the end of the Earn-Out Period, Purchasers shall calculate and provide to the Trustee written notice of Gross Revenue during the Earn-Out Period. If the Earn-Out Payment based on such calculation exceeds the aggregate amount of the Monthly Payments, Purchasers shall pay to Trustee (by no later than 15 days after the delivery to the Trustee of the written notice except if Trustee files a written notice of objection to the calculation of Gross Revenue) an amount equal to the difference between the Earn-Out Payment and the Monthly Payments.

(b)     If the Trustee delivers to Purchasers a written notice of its objection to the calculation of Gross Revenue (describing in reasonable detail the basis for such objection) within ten (10) days after receipt of the calculation of Gross Revenue, then such dispute shall be referred to an accounting firm mutually agreeable to the parties (the <u>"Independent Accountant");</u> provided, however, that if the parties cannot agree on an accounting firm within thirty (30) days of the delivery to Purchasers of the notice of objection, then the Independent Accountant shall be Ernst & Young, unless Ernst & Young is then providing services to the Trustee or Purchasers. If Ernst & Young can not serve as the Independent Accountant, then the Independent Accountant shall be Kaufman & Ros sin. The Trustee and Purchasers shall furnish or cause to be furnished to the Independent Accountant such work papers and other documents and information relating to the disputed issues as the Independent Accountant may request and are available to that party or its agents. The Trustee and Purchasers shall be afforded the opportunity to present to the Independent Accountant any material relating to the disputed issues, to review the work papers, documents and information furnished by the other party, and to discuss the issues with the Independent Accountant. The determination by the Independent Accountant, as set forth in a notice to be delivered to both the Trustee and Purchasers within sixty (60) days of the submission to the Independent Accountant of the issues in dispute, shall be final, binding

and conclusive on the parties. If the Independent Accountant determines that the Purchasers owe to Trustee any additional Earn-Out Payment, then Purchasers shall make such payment within five (5) days of the delivery of the notice of determination to the Purchasers by the Independent Accountant. The costs and expenses of the services of the Independent Accountant shall be paid equally by Trustee and Purchasers.

(c) If the Trustee fails to deliver to Purchasers a written notice of objection to the calculation of Gross Revenue within ten (10) days after receipt of the calculation of Gross Revenue, then the calculation provided by the Purchasers shall be final, binding and conclusive on the parties.

3.3 **Security for Payments.** In order to secure the obligation of the Purchasers to pay the Earn-Out, the holders of the equity interest in the Purchasers shall grant to Trustee a first priority security interest in and to all the equity interest in the Purchasers, pursuant to the terms of a Security and Pledge Agreement to be entered into by the parties prior to Closing.

3.4 **Allocation of the Purchase Price.** Trustee and Purchasers agree that as soon as practical, Purchasers and Trustee shall agree on the allocation of the Purchase Price and the assumed obligations between the Purchasers and among the Acquired Assets without a sub-allocation to assets owned by each of the Purchasers or the Acquired Entities (any agreed allocation hereinafter referred to as the "Allocation"). If Trustee and Purchasers cannot agree on the allocation, Trustee and Purchasers shall prepare separate allocations of the Purchase Price among the Acquired Assets and submit such separate allocations to arbitration by a firm of nationally recognized public accountants (the cost of which shall be borne by the Purchasers). The Allocation determined, shall be binding on each of the Trustee and Purchasers, and Trustee and Purchasers agree to act in accordance with the Allocation in any tax returns or similar filings, including without limitation, in filing Form 8594 or any other forms required under Section 1060 of the Code and the regulations thereunder; provided, however, that such allocation of the Purchase Price will not be binding upon the Trustee' creditors or other parties in interest in any proceeding under Chapter 11 of the Bankruptcy Code and will not have precedential value with respect to any allocations of value contained in a plan or plans under Chapter 11 of the Bankruptcy Code involving the Trustee.

## ARTICLE 4
## CLOSING AND BANKRUPTCY COURT APPROVAL

4.1 **Closing.** If the Sale Order is entered, then, subject to the satisfaction or waiver by the parties of the conditions to their respective obligations set forth in Articles 9 and 10 below, the Closing shall take place at the offices of Purchasers' counsel, Holland & Knight LLP, 701 Brickell Avenue, Suite 3000, Miami, Florida at 10:00 a.m. (ET) on a date selected mutually by Trustee and Purchasers, provided, that, such date shall be no later than five (5) days after the approval of the Sale Order or upon satisfaction or waiver of the conditions set forth in Articles 9 and 10. The time and date upon which the Closing occurs is referred to herein as the "Closing Date." All transactions at the Closing shall be deemed to take place simultaneously and none shall be deemed to have taken place until all shall have taken place. If the Bankruptcy Court determines that the

Purchasers' bid does not constitute the highest bid, then the Purchasers' offer to purchase the Acquired Assets shall remain open pending sale to the highest bidder and Purchasers' shall be prepared to close upon not less than five (5) business days notice from the Trustee (subject to the right to terminate set forth in Section 11.1).

4.2 **Court Approval Required.** Trustee and Purchasers acknowledge and agree that the Bankruptcy Court's entry of the Sale Order designating Purchasers' as the highest and best offer is required in order for Trustee and Purchasers to consummate the transactions contemplated hereby, and that the requirement that the Sale Order be entered is a condition that cannot be waived by either party. If the Sale Order or any other orders of the Bankruptcy Court relating to this Agreement shall be appealed by any Person (as defined in Section 101(41) of the Bankruptcy Code) or petition for certiorari or motion for rehearing or re-argument shall be filed with respect thereto, Trustee agrees to take all steps as may be reasonable and appropriate to defend against such appeal, petition or motion and Purchasers agree to cooperate in such efforts and each party hereto agrees to use its reasonable efforts to obtain an expedited resolution of such appeal. Trustee shall, exercising reasonable diligence and judgment, protect and defend the sale of the Acquired Assets to the Purchasers as a final sale of such Acquired Assets under Section 3 63(m) of the Bankruptcy Code notwithstanding reversal or modification of the Sale Order on appeal. The Purchasers hereby agree to reimburse the Trustee for legal fees (up to a maximum reimbursement of $20,000) directly related to the defense of any appeal filed by Alex F. Valladares challenging the validity of the Sale Order.

## ARTICLE 5

## DELIVERIES AT CLOSING

5.1 **Deliveries by Trustee.** At the Closing, Trustee shall deliver or cause to be delivered to Purchasers (and to be prepared by Purchasers subject to Trustee's comments) the following (each in form and substance reasonably satisfactory to Purchasers):

(a)     duly executed assignments of the equity interest in the Acquired Entities and the Shareholder Loan Rights, dated as of the Closing Date, transferring to FLM such assets;

(b)     duly executed assignments of the Franchise Rights and Estate's Contract Rights, dated as of the Closing Date, transferring to HCOA such assets;

(c)     a certificate or bill of sale transferring to FLM and HCOA, respectively, all of the Trustee's interest in the Acquired Assets;

(d)     the entering into of the Sale Order, which, among other matters, authorizes and approves each of the Purchasers assumption of the respective Acquired Assets, free and clear of all Liens;

(e)     such other instruments or documents as Purchasers may reasonably request to fully effect the transfer of the Acquired Assets and to confer upon Purchasers the benefits contemplated by this Agreement.

5.2 **Deliveries by Purchaser.** At the Closing, Purchasers shall deliver, or cause to be delivered (in addition to any other instruments required by this Agreement to be delivered by Purchasers at the Closing), the following:

      (a)    the Closing Date Cash Payment;

      (b)    a signed direction letter signed by Purchasers directing the Deposit Escrow Agent to release to the Deposit to Trustee;

      (c)    a signed Pledge Agreement in a form mutually agreeable to the parties; and

      (d)    such other instruments or documents as Trustee may reasonably request to fully effect the transfer of the Acquired Assets and to otherwise consummate the transactions contemplated by this Agreement (which documents shall be prepared by Purchaser).

## ARTICLE 6

## REPRESENTATIONS AND WARRANTIES OF PURCHASERS

Purchasers hereby represent and warrant to Trustee as follows:

6.1 **Organization, Good Standing and Power.** Purchasers are duly organized and are validly existing and in good standing under the laws of the State of Delaware. Purchasers have all requisite power and authority to own, use and operate its properties and to carry on its business as now being conducted.

6.2 **Authority Relative to this Agreement; Execution and Binding Effect.** The execution, delivery and performance of this Agreement by Purchasers and the consummation of the transactions contemplated hereby have been duly authorized by the board of directors, members or other comparable governing body of Purchasers and, subject to and conditioned upon the entry of the Sale Order, no other act or proceeding on the part of Purchasers is necessary to approve the execution and delivery of this Agreement, the performance by Purchasers of their obligations hereunder or the consummation of the transactions contemplated hereby. This Agreement has been duly and validly executed and delivered by Purchasers and constitutes a legal, valid and binding obligation of Purchasers, enforceable in accordance with its terms.

6.3 **No Breach.** The execution, delivery and performance by Purchasers of this Agreement and the consummation of the transactions contemplated hereby will not (i) with or without the giving of notice or the lapse of time, or both, conflict with, or result in the breach of or constitute a default under, or result in the modification, cancellation, lapse or termination of, or limitation, or curtailment under, or violate any (x) provision of law, or (y) any agreement, contract, lease, power of attorney, commitment, instrument, insurance policy, arrangement, undertaking, order, decree, ruling or injunction to which Purchasers are subject or a party or by which it is bound (or with respect to which its properties or assets are subject or bound); or (ii) violate the certificate of incorporation or bylaws (or comparable instruments) of Purchasers.

6.4 **Governmental and Other Consents.** Except for the Sale Order, no consent, notice, authorization or approval of, or exemption by, any governmental or public body or authority or by any other Person, whether pursuant to contract or otherwise, is required by Purchasers in connection with the execution, delivery and performance of this Agreement or any of the instruments or agreements herein referred to or the taking of any action herein or therein contemplated.

6.5 **Financial Ability.** Purchasers have cash available or have an existing ability to obtain borrowing facilities or funding commitments that are sufficient to enable it to consummate the transactions contemplated by this Agreement.

## ARTICLE 7

**[reserved]**

## ARTICLE 8

## COVENANTS AND AGREEMENTS

8.1 **Transaction Expenses.** Except as expressly provided for herein, each party shall itself pay all fees, costs and expenses incurred by it with respect to this Agreement, whether or not the transactions contemplated hereby are consummated.

8.2 **Access to Facilities, Personnel, and Information.** To the extent possible and upon the execution hereof, Trustee shall make available to Purchasers all of the books and records, facilities, personnel and information relating to the Acquired Assets. Upon the execution hereof, Trustee shall further authorize Purchasers to discuss the proposed transaction and future operations of the Franchises or Acquired Entities with all such individuals or entities providing services or leasing real property to, or otherwise in contractual arrangements with, Alex Valladares, Franchises or the Acquired Entities. For a period of time after the Closing and ending upon the delivery of the Earn-Out Payment to the Trustee, Purchasers hereby agree to permit Trustee and its agents reasonable access to the books and records relating to the business of the Acquired Assets.

8.3 **Further Assurances.** Purchasers and Trustee shall, from time to time prior to and after the Closing, without further consideration, execute and deliver such instruments and take such further actions as may be reasonably necessary or desirable to carry out the provisions hereof and the transactions contemplated hereby (including, but not limited to, the assignment of the Estate's right, title and interest to any agreement, assets or entity constituting property of the Estate, which (i) existed prior to the date of Closing, (ii) were not identified as an Acquired Assets pursuant to the terms hereof, (iii) but, in the exercise of the Purchaser's reasonable business judgment, are necessary to the continued operation of the Franchises and, upon assumption thereof, the agreements, assets or entities shall be deemed Acquired Assets for all purposes); provided, however, that the party being requested to provide such further assurances will not be required to incur any material expense in connection therewith and, with respect to the assignment

of agreements, assets or entities not otherwise described as Acquired Assets, that such request for assignment be delivered to the Trustee within one (1) year of the Closing. If Trustee or its agents collect receivables or other funds properly belonging to Purchasers after the Closing Date (including any revenue processed through any of the NFFS Agreements), Trustee shall (and shall cause its agents to) promptly forward such collections or funds to Purchasers.

8.4 **Payment of Certain Taxes.** Unless exempt under § 1146(c) of the Bankruptcy Code, Purchasers shall pay any and all sales, transfer or transaction taxes imposed by any taxing authority, including without limitation, any state, county, municipality or other subdivision thereof, in connection with the consummation of the transactions contemplated by this Agreement.

8.5 **Transfer Claim; Taxes.** Except as set forth in this Section 8.5, the Purchasers agree to waive all claims against the funds in the sum of $450,000 held in the trust account of Brian Behar, Esq.or his firm, Behar Glutt & Glazer,P.A., that were allegedly deposited by Myrna Valladares, Berta Aedo, Mario A. Prieto Batista, Angel Mederos or Health Management and Consulting, LLC ("Disputed Funds"). To the extent that the Trustee is successful in recovering the Disputed Funds for the benefit of the Estate, then the Trustee agrees to apply such funds first to the payment of any pre-closing tax liabilities incurred by the Estate with respect to or resulting from the Acquired Entities. To the extent that the Trustee is unable to recover the Disputed Funds or such recovery is insufficient to pay the entire pre-closing tax liability, then Purchasers agree to pay up to $125,000 to the Trustee (payable when the tax is determined and due) to cover any actual payments made by the Estate to the Internal Revenue Service for pre-closing tax liabilities incurred by the Estate with respect to or resulting from the Acquired Entities in calendar year 2009; provided, however, that all distributions made to the Estate for tax purposes prior to the Closing Date shall be credited against the aggregate pre-closing tax liability. The Trustee acknowledges that, to date, the following amount has been distributed to the Estate for the purpose
of making quarterly estimated tax payments to the Internal Revenue Service: _____ .
To the extent that the Trustee recovers the Disputed Funds after the Purchasers have paid to the Trustee the amounts agreed to herein for pre-closing tax liabilities, then the Trustee shall promptly reimburse Purchasers for any such payment on a dollar-for-dollar basis from the Disputed Funds. The Trustee hereby agrees that he will, in good faith, pursue the recovery of the Disputed Funds and Purchasers acknowledge the right of the Trustee to compromise all or any portion of the Disputed Funds so long as such decision is made in the reasonable exercise of his business judgment. If the Trustee does compromise any portion of the Disputed Funds, then the Trustee agrees to, as a condition of such compromise, to request a full release (in a form reasonably satisfactory to the Purchasers) from Myrna Valladares, Berta Aedo, and Health Management and Consulting, LLC, from any claims each may have against the Acquired Entities.

## ARTICLE 9

## CONDITIONS PRECEDENT TO THE OBLIGATIONS OF PURCHASERS

The obligation of Purchasers to consummate the transactions contemplated herein is subject to the satisfaction, at or before the Closing, of each of the following conditions (any of which conditions may, subject to Section 4.2, be waived by Purchasers in their sole discretion):

9.1 **Satisfaction of Obligations; Accuracy of Information.** Trustee shall have performed and complied in all respects with all covenants and agreements required by this Agreement to be performed or complied with by Trustee on or before the Closing Date.

9.2 **Sale Order.** The Bankruptcy Court shall have entered the Sale Order, which shall, among other matters, provide that Purchaser are good faith purchaser of the Acquired Assets.

9.3 **Deliveries at Closing.** Purchasers shall have received all documents and other items to be delivered by Trustee pursuant to Section 5.1 and shall have obtained assurances, reasonably acceptable to the Purchasers.

## ARTICLE 10

## CONDITIONS PRECEDENT TO THE OBLIGATIONS OF TRUSTEE

The obligation of Trustee to consummate the transactions contemplated herein is subject to the satisfaction, at or before the Closing, of each of the following conditions (any of which conditions, subject to Section 4.2, may be waived by Trustee in its sole discretion):

10.1 **Representations, Warranties and Covenants.** The representations and warranties of Purchasers contained in this Agreement shall be true and correct in all respects on and as of the Closing Date with the same force and effect as though made on the Closing Date. Purchasers shall have performed and complied in all respects with all covenants and agreements required by this Agreement to be performed or complied with by Purchasers on or before the Closing Date.

10.2 **Sale Order.** The Bankruptcy Court shall have entered the Sale Order.

10.3 **Deliveries at Closing.** Trustee shall have received all documents and other items to be delivered by Purchasers pursuant to Section 5.2.

## ARTICLE 11

## TERMINATION; EFFECT OF TERMINATION

11.1 **Termination of Agreement.** This Agreement may be terminated only as follows:

      (a)     by written agreement of Trustee and Purchasers at any time;

      (b)     by Purchasers, if the Closing shall not have occurred on or prior to the tenth (10th) day from the entry of the Sale Order;

      (c)     by Purchasers, on written notice to Trustee, if one or more of the conditions specified in Article 9 is not satisfied on or prior to the Closing Date or if satisfaction of such conditions is or becomes impossible;

(d)      by Trustee, on written notice to Purchasers, if one or more of the conditions specified in Article 10 is not satisfied on or prior to the Closing Date or if satisfaction of such conditions is or becomes impossible; or

(e)      by Trustee, with written notice to the other party, if the Closing does not occur (for whatever reason) on or before 5:00 p.m., eastern time, on October 15, 2009, for any reason other than by breach of the Trustee.

11.2  **Effect of Termination.** If this Agreement is terminated pursuant to Sections 11.1(a), (b) or (e) and the transactions contemplated hereby are not consummated, this Agreement shall become null and void and have no further force or effect and no liability shall attach to either of the parties and the Deposit shall be promptly returned to the Purchasers, provided that if there is a termination pursuant to Section 11.1(d) as a consequence of Purchasers' failure to comply with its material obligations under this Agreement, the Trustee shall be entitled to retain the Deposit as its sole and exclusive remedy, and if there is a termination pursuant to Section 11.1(c) as a result of the Trustee's failure to comply with its material obligations under this Agreement, the Purchasers shall be entitled to a return of the Deposit, as its sole and exclusive remedy. Notwithstanding any other provision herein to the contrary, the Trustee hereby agrees and acknowledges that the Trustee's remedy against Purchasers for any claim or cause of action that may arise hereunder, including, but not limited to, any claim arising from the Purchasers' breach of any representations, warranties, or covenants hereunder, shall be solely and exclusively limited to the amount of the Deposit. Notwithstanding anything in this Agreement to the contrary, the provisions of Sections 8.2, 11.2, 12.2, 12.4, and 12.12 shall survive any termination of this Agreement.

## ARTICLE 12

## MISCELLANEOUS

12.1  **Termination of Representations and Warranties.** The representations and warranties of the Purchasers set forth in this Agreement shall terminate and be of no further force or effect after the Closing Date.

12.2  **Jurisdiction.** The parties agree that the Bankruptcy Court shall retain exclusive jurisdiction to resolve any controversy or claim arising out of or relating to this Agreement or the implementation or the breach hereof.

12.3  **Notices.** All notices, consents or other communications required or permitted hereunder shall be given in writing and hand delivered or addressed and sent by Federal Express or other recognized overnight courier, or by certified or registered mail, postage prepaid, and return receipt requested, as follows:

If to Trustee:            Barry Mukamal, Trustee
                          MarcumRachlin, a division of Marcum LLP 1
                          S. E. 3rd Avenue, 10th Floor
                          Miami, FL, 33131
                          Telephone: (305) 603-0484
                          Fax: (305) 377-8331

with a copy to:           Gary M. Freedman, Esq.
                          Tabas, Freedman, Soloff, Miller & Brown, P.A.
                          14 N.E. First Avenue
                          Penthouse
                            Miami, Florida 33132
                          Telephone: (305) 375-8171
                          Fax: (305) 381-7708

If to Purchasers:         c/o Holland & Knight LLP
                          701 Brickell Avenue Suite
                          3000
                          Miami, Florida 33131
                          Attn: Richard A. Perez, Esq.
                                    Tel: 305-789-7630 Fax: 305-789-7613

or to such other address as may hereafter be designated by any party by the giving of notices in accordance with this Section 12.3. All notices, consents or other communications shall be deemed given when actually delivered (in the case of hand delivery by Federal Express or other recognized overnight courier) or received by fax or five days after mailing in accordance with this Section 12.3.

12.4 **Governing Law.** To the extent not governed by the Bankruptcy Code, this Agreement shall be governed by and construed, in accordance with the laws of the State of Florida, without giving effect to rules governing the conflict of laws.

12.5 **Waiver.** The waiver by a party of a breach of any covenant, agreement or undertaking contained herein shall be made only by a written waiver in each case. No waiver of any breach of any covenant, agreement or undertaking contained herein shall operate as a waiver of any prior or subsequent breach of the same covenant, agreement or undertaking or as a waiver of any breach of any other covenant, agreement or undertaking.

12.6 **Severability.** If any provision of this Agreement shall be held invalid, illegal or unenforceable, in whole or in part, the validity, legality, and enforceability of the remaining part of such provision, and the validity, legality and enforceability of all other provisions hereof or thereof, shall not be affected thereby.

- 14 -

12.7 **Counterparts.** This Agreement may be executed in one or more counterparts (whether manually signed or by facsimile), each such counterpart shall be deemed an original, and all such counterparts shall constitute one and the same agreement.

12.8 **Captions; References.** The headings, titles or captions of the Articles and Sections of this Agreement are inserted only to facilitate reference, and they shall not define, limit, extend or describe the scope or intent of this Agreement or any provision hereof, and they shall not constitute a part hereof or affect the meaning or interpretation of this Agreement or any part hereof.

12.9 **Amendments.** This Agreement may not be amended, changed, modified, altered or terminated unless the parties hereto agree in writing to such amendment, change, modification, alternation or termination.

12.10 **Binding Nature; Assignment.** This Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective successors and permitted assigns, but neither this Agreement nor any of the rights, interest or obligations hereunder shall be assigned by any of the parties hereto without prior written consent of the other parties; except, that Purchasers may, on or prior to Closing, assign its rights to purchase some or all of the Acquired Assets to one or more affiliated entities of Purchasers or to any non-affiliated entity that has a similar or better financial ability to consummate the transactions contemplated herein (a "Permitted Designee"); provided that Purchasers shall remain obligated to cause any such Permitted Designee to perform the obligations of Purchasers hereunder allocable and attributable to the portion of the Acquired Assets acquired by such Permitted Designee. Nothing contained herein, express or implied, is intended to confer on any Person other than the parties hereto or their successors and assigns, any rights, remedies, obligations or liabilities under or by reason of this Agreement.

12.11 **No Third Party Beneficiaries.** This Agreement is a contract solely between Purchasers and Trustee. Other than a Permitted Designee upon, and to the extent of, its designation, no third party beneficiaries (including, without limitation, employees and customers of Trustee) are intended hereunder and none shall be inferred herein; and no party other than Purchasers or Trustee may assert any right, make any claim or otherwise attempt to enforce any provision of or under this Agreement.

12.12 **Overbid Auction.** Purchasers acknowledge that their offer may be subject to the Trustee's receipt of higher and/or better offers in the course of the Bankruptcy Court approval process.

**(Signatures Next Page)**

IN WITNESS WHEREOF, the parties have caused their duly authorized officers to execute this Agreement as of the day and year first written above.

TRUSTEE:

**BARRY MUKAMAL,** as trustee for the estate of Alex F. Valladares

By:
Name:
Title:


PURCHASERS:

**FITNESS LEASE MANAGEMENT, LLC,** a Delaware limited liability company


By:
Name:
Title:


**HCOA FRANCHISE HOLDING, LLC,** a Delaware limited liability company


By:
Name:
Title:


**Exhibit A:     List of Franchises**
**Exhibit B:     Listed of Acquired Entities**
**Exhibit C: Sale Order**

## Exhibit A
## List of Franchises

FLM shall acquire the rights to operate and manage (including, but not limited to the right to receive all revenue derived from members of) the Lady of America Centers operating at the following locations (or successor location):

| | | |
|---|---|---|
| **Arecibo, Puerto Rico**<br>Carr. #2 KM 80.0 Barrio Hato Abajo<br>Vista Azul Shopping Center<br>Arecibo, PR 00614 | **Bayamon, Puerto Rico**<br>Site #18 & #18A<br>S.R. #2, km 13.9<br>Hato Tejas, Bayamon, PR | **Caguas, Puerto Rico**<br>Carr. #1 Km 33.3<br>Avenida Angora<br>Caguas, PR 00725 |
| **Carolina, Puerto Rico**<br>Plaza Carolina Av. Fragosa<br>Esquina Sanchez Osorio<br>Carolina, PR 0987 | **Cayey, Puerto Rico**<br>Plaza Doval Local #2 Carr. #1<br>KM 56.1 Bo Montellanos<br>Cayey, PR 00736 | **Country Walk, Miami, FL**<br>15417 SW 1 37th Avenue<br>Miami, Florida 33177 |
| **Dorado, Puerto Rico**<br>Carr. Estatal 693 Esquina Ave. Jose Efron<br>Plaza Dorada<br>Dorado, PR 00646 | **Fajardo, Puerto Rico**<br>Carr. #3 Km 45.5<br>Fajardo, PR 00738 | **Guaynabo, Puerto Rico**<br>Los Jardines Shopping Ctr.<br>Carretera 20 Kilo 3.5 Segundo Piz<br>Guaynabo, PR 00969 |
| **Hato Rey, Puerto Rico**<br>Edificio Roosevelt #147<br>Hato Rey, PR 00929 | **Humacoa, Puerto Rico**<br>Oriental Plaza Mall # 1A<br>Ave. Tejas, Carr. 908<br>Fuente El Colegio Universitario,<br>Humacao, PR 00791 | **Ludlam, Miami, FL**<br>Bird Ludlam Shopping Center<br>6826 S.W. 40 Street<br>Miami, FL 33155 |
| **Mayaguez, Puerto Rico**<br>826 Ave. Hostos<br>Mayaguez, PR 00682 | **Miami Gardens, FL**<br>8575 NW 186 Street #6-7<br>Miami Gardens, FL 33015 | **Miami Lakes, FL**<br>6625 Miami Lakes Drive<br>Suite 100<br>Miami Lakes, FL 33014 |
| **Ponce, Puerto Rico**<br>2641 Ponce by Pass<br>Ponce Towne Center<br>Ponce, PR 00728-4 100 | **Ponce, Puerto Rico**<br>Calle Marginal, Solar #2<br>By Pass<br>Ponce, PR 00731 | **Rexville, Puerto Rico**<br>Carr. PR 861, KM 41<br>Urbanizacion Ciudad Jardin<br>Bayamon, PR 00954 |
| **San Juan, Puerto Rico**<br>100 Grand Blvd Ste. 310<br>Galleria Paseos Mall<br>San Juan, PR 00926 | **Vega Baja, Puerto Rico**<br>Carr. PR #2 KM 39.1, Barrio Algarrobo<br>Plazas Las Vegas<br>Vega Baja, PR 00693 | **West Flager, Miami, FL**<br>8247 W. Flagler Street<br>Miami , FL 33126 |

**Exhibit B**
**Acquired Entities**

| Acquired Entities | Percentage of Equity Interest Transferred | |
|---|---|---|
| Advanced Fitness Consulting, Inc. | 50% | |
| Arecibo Fitness Management, Inc. | 100% | |
| Bayamon Lady, Inc. | 100% | |
| Country Walk Lady, Inc. | 50% | |
| Dorado Fitness Management, Corp. | 100% | |
| Equity Finance and Development LLC | 100% | |
| Equity Management & Consulting Group LLC | 100% | |
| Fitness Club of America LLC | 50% | |
| Fitness Clubs of Puerto Rico LLC | 50% | |
| Guaynabo Fitness Management, Corp. | 100% | |
| Intercontinental Management and Consulting, Inc. | 100% | |
| Miami Lakes Fitness & Consulting, LLC | 50% | |
| Milenium Fitness Management, Inc. | 100% | |
| Rexville Fitness Management, Inc. | 100% | |
| Tamiami Trail Lady, Inc. | 50% | |
| Vega Baja Fitness Management, Corp. | 100% | |
| Western Fitness Management, Corp. | 100% | |
| West Flagler Consulting Services, Inc. | 100% | |

**Exhibit C**
**Sale Order**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
www.flsb.uscourts.gov

IN RE:                                    CASE NO.: 08-13450-AJC

ALEX VALLADARES

    Debtor.

_____/

**ORDER AUTHORIZING AND APPROVING THE SALE OF CERTAIN
ASSETS OF THE DEBTOR FREE AND CLEAR OF LIENS,
<u>CLAIMS, INTERESTS, CHARGES AND ENCUMBRANCES</u>**

**THIS MATTER** came before the Court on the 11th day of September 2009 at 10:30 a.m. in

Miami, Florida, upon the Court's *Sua Sponte Order Sua Sponte Order (A) Establishing Bidding and*

*Sale Procedures. (B) Shortening Time for Deadlines on Confirmation Hearing and (C) Scheduling*

*Sale Hearing and Confirmation. Final Sale Hearing* (**"Sale Procedures Order"**) (**D.E.** 287).

There were three objections filed to the Sale Procedures Order: (1) D.E. 327 filed by Hoyt

Stephenson, National Financial Systems Management, Inc., Fitness Clubs of America, LLC; (2) D.E.

328 filed by the Debtor; and (3) D.E. 329 filed by Berta Aedo, Mirna Valladares. At the

Sale Hearing, Purchasers, as defined below, stipulated that the Purchase Agreement is not subject to a resolution of the Motion to Vacate Final Judgment pending in Adversary Case No. 09-1257-BKC-AJC-A, and Lady of America Franchise Corporation ("LOAFC") stipulated that if the Purchase Agreement is approved and the contemplated sale closes that (1) it would make no claim to the $450,000 held in the trust account of Debtor's counsel Brian Behar (the "Disputed Funds") and support the Trustee's efforts to obtain a Court determination that the Disputed Funds are property of this bankruptcy estate and (2) that it would waive any claim against this bankruptcy estate upon closing of the Purchase Agreement. At the Sale Hearing, the Court announced that Fitness Lease Management LLC and HCOA Franchise Holding LLC (the "Purchasers") had submitted the highest or best offer for certain assets pursuant to the attached Purchase Agreement (the "Purchase Agreement") (attached hereto as Exhibit 1) executed between the Trustee and the Purchasers. The assets subject of the Purchasers' offer are identified in the Purchase Agreement (the "Acquired Assets"), which, for purposes of clarity, provides that the Trustee shall sell all right, title and interest to the Acquired Assets that are property of the Estate. The Court having reviewed and considered the arguments of counsel made, and the evidence proffered or adduced at the Sale Hearing; and it appearing that the relief requested is in the best interests of the Debtor, its estate and creditors and other parties in interest, for the reasons cited on the record and those listed below it is

**ORDERED** as follows:

1. For the reasons state on the record, in addition to those reasons recited herein, the sale under 11 U.S.C.§363 to the Purchasers of the Acquired Assets pursuant to the Purchase Agreement AS IS, WHERE IS, WITHOUT ANY REPRESENTATIONS OR WARRANTIES OF ANY KIND by the Trustee is **APPROVED** and the Purchase Agreement is incorporated herein.

All Objections, if any, to the Sale that have not been withdrawn, waived, or settled as set forth herein, or otherwise, and all reservations of rights included therein, are hereby overruled on the merits.

2.      The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Fed. R. Bankr. P. 7052, made applicable to this proceeding pursuant to Fed. R. Bankr. P. 9014

3.      The Court further notes that it has serious concerns about the Debtor's ability to propose a confirmable plan, including but not limited to the Debtor's ability to meet the good faith requirement under 11 U.S.C. § 1 129(a)(3) .

4.      The Court has jurisdiction over the transactions contemplated by the Purchase Agreement pursuant to 28 U.S.C. §§ 157 and 1334, and this matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (N). Venue of this case in this district is proper under 28 U.S.C. §§ 1408 and 1409.

5.      The statutory and rule based predicates for the relief sought are sections 105 and 363 of the Bankruptcy Code, and Fed. R. Bankr. P. 2002, 6004 and 9014.

6.      Due, proper, timely, adequate and sufficient notice of the Sale Procedures Order, the Sale Hearing, and the Auction has been provided in accordance with sections 102(1) and 363 of the Bankruptcy Code and Fed. R. Bankr. P. 2002, 6004 and 9014 and in compliance with the Sales Procedures Order to each party entitled thereto, such notice was good and sufficient, and appropriate under the particular circumstances, and no other or further notice is or shall be required.

7.      The Trustee has provided potential bidders with an opportunity for adequate due diligence.

8.      As demonstrated by (i) the testimony and other evidence proffered or adduced at the Sale Hearing and (ii) the representations of counsel made on the record at the Sale Hearing, the Trustee has marketed the Acquired Assets and conducted the sale process in compliance with the Sale Procedures Order and the Auction was duly noticed.

9.      The Bidding Procedures afforded a full, fair and reasonable opportunity for any qualified entity to make a higher and better offer to purchase the Acquired Assets and no higher or better offer has been made. The Bidding Procedures approved in the Sale Procedures Order have been fully complied with in all respects.

10.      The Trustee has full authority to execute the Purchase Agreement and all other documents contemplated thereby.

11.      The Trustee has demonstrated good, sufficient, and sound business purposes and justifications for the Sale pursuant to section 363(b) of the Bankruptcy Code.

12.      The Sale of the Acquired Assets is a reasonable exercise of the Trustee's business judgment.

13.      The Purchase Agreement was negotiated, proposed and entered into by the Trustee and the Purchasers without collusion, in good faith, and from arm's-length bargaining positions. Neither the Trustee nor the Purchasers or any of their affiliates have engaged in any conduct that would cause or permit the Purchase Agreement to be avoided under section 3 63(n) of the Bankruptcy Code.

14.      The Purchasers are good faith purchasers under section 3 63(m) of the Bankruptcy Code and, as such, is entitled to all of the protections afforded thereby with respect to the transactions hereby approved.

15.      Neither the Purchasers nor any of their affiliates is an "insider" of the Debtor or any

party affiliated with the Debtor, as that term is defined in section 101 of the Bankruptcy Code.

16.     The consideration provided by the Purchasers for the Acquired Assets pursuant to the Purchase Agreement (i) is fair and reasonable, (ii) is the highest or otherwise best offer for the Acquired Assets, (iii) will provide a greater recovery for the Debtor's creditors than would be provided by any other practical available alternative, and (iv) constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code and under the laws of the United States and the State of Florida.

17.     The Debtor has good title to the Acquired Assets and, accordingly, the transfer of such Acquired Assets to the Purchasers pursuant to the Purchase Agreement will be a legal, valid and effective transfer of the Acquired Assets.

18.     As of the Closing and pursuant to the terms of the Purchase Agreement, the transfer of the Acquired Assets to the Purchasers will be a legal, valid, enforceable, and effective transfer of the Acquired Assets, and will vest the Purchasers with all right, title, and interest of the Debtor in the Acquired Assets free and clear of all liens, claims, encumbrances and interests. ("Interests"). All such Interests shall attach to the Sale Proceeds in the same priority as they existed in the Purchase Assets. Notwithstanding, the secured claim filed by Yamin Meneses, shall be satisfied in full as against the estate upon the payment of $300,000 pursuant to the terms of the Purchase Agreement.

19.     The Purchasers would not have entered into the Purchase Agreement and would not consummate the transactions contemplated thereby, thus adversely affecting the Debtor, its estate, and its creditors, if the sale of the Acquired Assets to the Purchasers was not free and clear of all Interests as defined herein.

20.     The Trustee may sell all of the Acquired Assets free and clear of all Interests

because, in each case, one or more of the standards set forth in section 363 (f)(1 )-(5) of the Bankruptcy Code has been satisfied.

21.     Neither the Purchasers nor any of their affiliates is a successor to the Debtor or its bankruptcy estate by reason of any theory of law or equity, and neither the Purchasers nor any of their affiliates shall assume or in any way be responsible for any liability or obligation of any of the Debtor and/or its bankruptcy estate other than as specifically provided in the Purchase Agreement.

22.     Proper, timely, adequate and sufficient notice of the proposed Sale has been provided by the Trustee to all relevant parties, and no other or further notice is required.

23.     The Trustee is authorized to execute such other documents as are reasonably necessary or desirable to implement this Order.

24.     The Purchase Agreement substantially in the form attached hereto as Exhibit 1, and all of the terms and conditions thereof, are hereby approved in all respects, and the Sale of the Acquired Assets to the Purchasers is authorized under sections 105 and 363(b) and (f) of the Bankruptcy Code.

25.     The provisions of sections 3 63(b) and (f) of the Bankruptcy Code have been complied with as to the Sale of the Acquired Assets.

26.     Pursuant to section 3 63(b) of the Bankruptcy Code, the Trustee is authorized to perform its obligations under and comply with the terms of the Purchase Agreement, and consummate the Sale, pursuant to and in accordance with the terms and conditions of the Purchase Agreement.

27.     The Trustee is authorized and directed, pursuant to sections 105(a) and 3 63(b) and (f) of the Bankruptcy Code, to execute and deliver, and empowered to fully perform under, consummate and implement, the Purchase Agreement, together with all additional instruments,

agreements and documents that may be reasonably necessary or desirable to implement the Purchase Agreement and to take all further actions as may be reasonably requested by the Purchasers for the purpose of assigning, transferring, granting, conveying and conferring to the Purchasers, or reducing to the Purchasers' possession, any or all of the Acquired Assets and as may be necessary or appropriate to the performance of the obligations contemplated by the Purchase Agreement.

28.    The Purchasers shall pay or deliver the Purchase Price at the Closing of the purchase and sale transaction in accordance with the terms of the Purchase Agreement and this Order..

29.    This Order and the Purchase Agreement shall be binding in all respects upon all creditors (whether known or unknown) of the Debtor, all successors and assigns of the Purchasers, the Debtor and its affiliates and subsidiaries, and any subsequent trustees appointed in the Debtor's chapter 11 case or upon a conversion to chapter 7 under the Bankruptcy Code.

30.    The Purchase Agreement and any related agreements, documents, or other instruments may be modified, amended or supplemented by the parties thereto in a writing signed by both parties without further order of the Court, provided that any such modification, amendment, or supplement does not have a material adverse effect on the Debtor's estate.

31.    Except as expressly permitted or otherwise specifically provided for in the Purchase Agreement or this Order, pursuant to sections 105(a) and 363(f) of the Bankruptcy Code, the Acquired Assets shall be transferred to the Purchasers upon consummation of the Purchase Agreement (the "Closing"), and shall be free and clear of all Interests as defined herein, with all such Interests of any kind or nature whatsoever to attach to the net proceeds of the Sale in the order of their priority, with the same validity, force and effect which they now have as against the Acquired Assets, subject to any claims and defenses the Debtor may possess with respect thereto.

32.     Except as expressly permitted or otherwise specifically provided by the Purchase Agreement or this Order or to enforce the terms of the Purchase Agreement or this Order, all persons and entities, including all debt security holders, equity security holders, governmental, tax, and regulatory authorities, parties to executory contracts, customers, lenders, trade and other creditors, holding Interests as defined herein against or in the Debtor or the Acquired Assets (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or non-contingent, senior or subordinated), arising under or out of, in connection with, or in any way relating to, the Debtor, the Acquired Assets, the operation of the Debtor's business prior to the Closing, or the transfer of the Acquired Assets to the Purchasers, hereby are forever barred, estopped, and permanently enjoined from asserting against the Purchasers, its successors or assigns, the Purchasers' property, or the Acquired Assets, such persons' or entities' Interests.

33.     The transfer of the Acquired Assets to the Purchasers pursuant to the Purchase Agreement shall constitute a legal, valid, and effective transfer of the Acquired Assets, and shall vest the Purchasers with all right, title, and interest of the Debtor in and to the Acquired Assets free and clear of all Interests as defined herein.

34.     The Debtor shall fully cooperate with the transfer of the Acquired Assets, including, but not limited to, resigning as an officer or director of all Acquired Entities, turning over all books and records (including account information, any computer files in the possession of the debtor) of any Acquired Entities in his possession, custody or control, and shall be prohibited, directly or indirectly, from accessing any accounts or the facilities associated with the Franchises.

35.     Except as expressly permitted or otherwise specifically provided by the Purchase Agreement or this Order, if any person or entity that has filed financing statements, mortgages, mechanic's liens, lis pendens, or other documents or agreements evidencing Interests in the Debtor

affecting the Acquired Assets or the Acquired Assets shall not have executed prior to the Closing, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, or releases of all Interests which the person or entity has with respect to the Debtor affecting the Acquired Assets or the Acquired Assets or otherwise (which shall be held in escrow pending closing), then the Purchasers are hereby authorized and directed to execute and file such statements, instruments, releases and other documents on behalf of the person or entity with respect to the Acquired Assets and is authorized to file, register, or otherwise record a certified copy of this Order, which, once filed, registered or otherwise recorded, shall constitute conclusive evidence of the release of all Interests in the Acquired Assets.

36. To the fullest extent that the Court is authorized under applicable law to so order, neither the purchase of the Acquired Assets by the Purchasers nor the transactions contemplated hereby will cause the Purchasers or any of its affiliates to be deemed a successor in any respect to the Debtor's business within the meaning of any federal, state or local revenue, pension, ERISA, tax, labor or environmental law, rule or regulation or under any products liability law or doctrine with respect to the Debtor's liability under such law, rules, regulations or doctrines. In addition, to the fullest extent that the Court is authorized under applicable law to so order, except as expressly provided in the Purchase Agreements or Order of this Court, the Purchasers do not acquire or assume any of the Debtor or any other person's liabilities, including any of the Debtor's obligations under any employment or collective bargaining agreement, and in no event shall Purchasers (a) be deemed the successor of the Debtor, (b) have, de facto or otherwise, merged with or into the Debtor or (c) be a mere continuation of the Debtor or the enterprises of the Debtor. To the greatest extent permitted by law, the Purchasers and their affiliates shall have no liability or obligation, if any, under The Worker Adjustment and Retraining Notification Act, 29 U.S.C. §§ 2101, et seq.

(the "WARN Act"), or the Comprehensive Environmental Response Compensation and Liability Act, or any federal, state or local environmental law by virtue of the Purchasers' purchase of the Acquired Assets.

37.    The consideration provided by the Purchasers for the Acquired Assets under the Purchase Agreement shall be deemed to constitute reasonably equivalent value and fair consideration under the Bankruptcy Code and under the laws of the United States and the State of Florida.

38.    The consideration provided by the Purchasers for the Acquired Assets under the Purchase Agreement is fair and reasonable and may not be avoided under section 3 63(n) of the Bankruptcy Code.

39.    On the Closing, each creditor of the Debtor is authorized and directed to execute such documents and take all other actions as may be necessary to release its Interests in the Acquired Assets, if any, as such Interests may have been recorded or may otherwise exist.

40.    The foregoing notwithstanding, the provision of this Order authorizing the sale and assignment of the Acquired Assets of the Debtor free and clear of Interests shall be self-executing, and notwithstanding the failure of the Debtor, the Purchasers, or any other party to execute, file or obtain releases, termination statements, assignments, consents or other instruments to effectuate, consummate and/or implement the provisions hereof or the Purchase Agreement with respect to the sale and assignment of such Acquired Assets, all Interests on such Acquired Assets shall be deemed released and shall attach to the proceeds of the Sale pursuant to this Order. All persons or entities that are presently, or at the Closing, in possession of any of the Acquired Assets, are hereby directed to surrender possession of such Acquired Assets to the Purchasers, or its designee at the Closing (except to the extent the Purchase Agreement expressly provides otherwise).

41.     This Order shall be effective as a determination that, on the Closing, all Interests, as defined herein, existing as to the Debtor or the Acquired Assets prior to the Closing have been unconditionally released, discharged and terminated, and that the conveyances described herein have been effected. From and after entry of this Order, neither the Debtor nor any creditor or other party in interest shall take or cause to be taken any action that would interfere with the transfer of the Acquired Assets to Purchasers in accordance with the terms of this Order and the Purchase Agreement, except as provided in paragraph 46 of this Order.

42.     Following the Closing, neither the Debtor nor any holder of an Interest in the Debtor or the Acquired Assets shall interfere with the Purchasers' title to or use and enjoyment of the Acquired Assets based on or related to such Interest.

43.     Following the Closing, Purchasers and Trustee shall, from time to time, without further consideration, execute and deliver such instruments and take such further actions as may be reasonably necessary or desirable to carry out the provisions hereof and the transactions contemplated hereby (including, but not limited to, the assignment of the Estate's right, title and interest to any agreement, assets or entity constituting property of the Estate, which (i) existed prior to the date of Closing, (ii) were not identified as an Acquired Assets pursuant to the terms hereof, (iii) but, in the exercise of the Purchaser's reasonable business judgment, are necessary to the continued operation of the Franchises and, upon assumption thereof, the agreements, assets or entities shall be deemed Acquired Assets for all purposes); provided, however, that the party being requested to provide such further assurances will not be of agreements, assets or entities not otherwise described as Acquired Assets, that such request for assignment be delivered to the Trustee within one (1) year of the Closing. If Trustee or its agents collect receivables or other funds properly belonging to Purchasers after the Closing Date (including any revenue processed

through any of the NFFS Agreements), Trustee shall (and shall cause its agents to) promptly forward such collections or funds to Purchasers.

44.    The Purchasers and the Trustee have reached agreements reflected in Section 8.5 of the Purchase Agreement (a) related to the disposition of the Disputed Funds and (b) whereby Purchasers have agreed to make an accommodation related to certain potential pre-closing tax liabilities incurred by the Estate with respect to the Acquired Assets.

45.    This Court retains jurisdiction to enforce and implement the terms and provisions of this Order and the Purchase Agreement, all amendments thereto, any waivers and consents thereunder, and each of the agreements executed in connection therewith, in all respects, including retaining jurisdiction to (a) compel delivery of the Acquired Assets to the Purchasers, (b) compel delivery of the purchase price or performance of other obligations owed to the Trustee, (c) resolve any disputes arising under or related to the Purchase Agreement, including any dispute regarding ownership of any of the assets necessary to retain the benefit of the Franchise Rights, except as otherwise provided therein, and (d) interpret, implement, and enforce the provisions of this Order.

46.    The 10 day stay period under Bankruptcy Rule 6004(h) has not been waived. The transactions contemplated by the Purchase Agreement are undertaken by the Purchasers in good faith, as that term is used in section 3 63(m) of the Bankruptcy Code, and accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the Sale shall not affect the validity of the Sale to the Purchasers, unless such authorization is duly stayed pending such appeal. The Purchasers are purchasers in good faith of the Acquired Assets, and is entitled to all of the protections afforded by section 3 63(m) of the Bankruptcy Code.

47.    Finally, if any party moves to reconsider this Order within 10 days of its entry on the basis that they have a bid in cash for more than 10% over the consideration under the Purchase

Agreement, in non-disputed funds, the Court may at its discretion after notice and hearing reopen the

bidding process.

# # #

<u>Submitted by:</u>
Howard J. Berlin, Esq.
BERGER SINGERMAN, P.A.
200 S. Biscayne Boulevard, 10th Floor
Miami, FL 33131
Tel. (305) 755-9500
Fax (305) 714-4340
E-mail: hberlin@bergersingerman.com

<u>Copies to:</u>
Howard J. Berlin, Esq.
*(Attorney Berlin shall serve a copy of this Order upon all interested parties upon receipt and file a certificate of service.)*
# 8836026_v2.

# 8817089_v3